Today will be Lezark v. IC Systems, number 221804, and we'll hear from Appellant's counsel. Before you start, the issue of standing is an important threshold in this and every case, and we ask that you address that as part of your presentation. Thank you. Thank you, Your Honor. Are you reserving any time? Three minutes, please. Okay, that'll be granted. And I was going to address standing first, so that's perfect. And if the Court doesn't have any questions, I will begin with my presentation. So standing is a threshold issue, and we believe that standing exists for at least three reasons. One would be the judgment of Congress. Two would be that my client did suffer an informational injury or something related to an informational injury under three different Supreme Court cases. And then the third would be that the harm that he suffered is similar to a common law harm. Can I ask you, in terms of did your client suffer pecuniary harm? I mean, I'm reading in his debt about he thought he was going to be sued, and then he went to a bankruptcy attorney. You know, he must have had to pay for that. And did he file a bankruptcy petition as a result? So that is true. The letter, he believed that he would be sued after he got the letter. That prompted him then to go see an attorney. Now, I don't, I'm not sure that we can allege that he would, it was a but-for cause for filing the bankruptcy because he did have other issues. Obviously, he wouldn't want to file bankruptcy over one letter. But the letter is what prompted him to go to an attorney because, as he testified, it made him feel overwhelmed. Did he file for bankruptcy? He did file for bankruptcy. He's in an active bankruptcy right now. Okay. Related to that question about damages, we know from TransUnion, we know from Spokio, that what we need to look for is some kind of tort analog here, if you will. That's not the language that was used in TransUnion. But that we're looking for some kind of close relationship between the statutory injury that the plaintiff relies on and some kind of traditionally actionable harm. So what is that here? You mentioned some informational damage or harm. But, I mean, this is not like the factual situation in TransUnion where you had a dissemination of information to a certain number of people out there suggesting a criminal record. So to get to the chase, what is the traditional actionable harm to which you were looking for? More precisely, what tort would you analyze this to? Of course. So before I answer that question, I just would like to clarify that I think there's two roads we can go down. One would be the informational road or harms that are similar to those statutes where you don't need a common law analog and then also the common law road. But I think we satisfy both of those. I think if you walk down both of those roads, we satisfy both tests. So for the common law path, I believe in our brief we identified two common law analogs, which would be invasion of privacy and then also misrepresentation torts. How close is this to invasion of privacy? I mean, how does a letter sent directly to Mr. Lazark by the defendant here somehow invade his privacy? Of course. Any more than any other piece of mail that perhaps bears some bad news? Yes. So I do agree that there's obviously not one invasion of privacy tort. There's many. I think this would be closer to intrusion upon seclusion. I think that's the closest common law analog. And the reason I think it is an invasion of privacy, and it's at least close enough to it, is that if we look at the contents of the letter, we allege that it misrepresented that Mr. Lazark would either be hearing from an attorney or he would be subject to additional remedies if he did not pay. So on this point, I'd like to focus the court on Cicino, again, a case that was cited in our briefs. There, if you look at the contents of that phone call, I think there's two things that are important why our case is similar to that case. So there's different statutes. That's a TCPA. This is the FDCPA. That's true. But the phone call in that case, first of all, it was a voicemail. So it was a phone call that was missed and then someone had to listen to. It's very similar to a letter where someone has to open it and read it. Second, the contents of that call, it was a promotional message for a gym membership. The contents of that call are much less severe than the contents of the letter that my client received, which misrepresented what could happen to him if he did not pay. So that's why we believe that it's sufficiently close to the invasion of privacy tort that the harm suffered is enough to show a concrete harm here. I had two questions. One would be in the context, in the procedural context of this case, what is it we can properly consider? Only the complaint or we can consider other things in the record like the deposition? And then the second part is if we only, well, I guess either way, if we were to decide to vacate and remand to allow you to amend your complaint to add more on standing, what actually would you allege? Of course. I think because this is a facial challenge to standing, you can only consider the allegations of the complaint. But I think if the complaint is not sufficient for standing, what we would allege is what Mr. Oldsark testified to is that at least he read the letter and felt overwhelmed that it prompted him to go to an attorney. Now, I don't think that we could allege that that is the but-for cause of his filing for bankruptcy. So I want to be clear on that. But it did prompt him to go to an attorney because he feared the consequence that could not happen. Did you have an obligation to submit an amended complaint when you asked the court to reconsider? So the reason why I don't believe we may have had a technical obligation to do that, but I think we still satisfied the substance of the rule, of that requirement, because our amended complaint, if you compare it to the concise statement of material facts, which is obviously a paragraph-by-paragraph presentation of the evidence, it's almost the same as that. It's basically copied. So we submitted our motion for summary judgment before IC Systems submitted its motion for judgment on the pleadings. And that concise statement of material facts goes through a paragraph form. All the evidence we submitted to the court that we obtained through two rounds of discovery and that we believe supported our case. But by not attaching the proposed complaint, didn't that leave the district judge here without some of the information, at least some of the averments that she would have been called upon to consider to your benefit? I don't think so, because we included those averments in the concise statement of material facts, and we included all of the evidence that supported them. And it's, again, I do recognize that we requested, in a SIR reply, to file an amended complaint that incorporated those allegations. But we did file those allegations in a timely manner, in accordance with the case management deadlines that were set by the district court. Does transunion change the way that we should be looking at our Brown case and Lesher? From a standing perspective. Correct. So the, and I think, again, this goes the two paths we can go down. We can go down informational injury path or the common law analog path. I don't think transunion, transunion, of course, requires some kind of common law analog if you're going down the second path. So it does change it from that aspect. But I think an important thing in the informational injury path is that there's, I believe there's three cases that the court is aware of, that we are aware of, public citizen, Aikens, and then Havens Realty. So in all of those cases, there was no common law analog, but there was still standing. And I believe in Kelly v. Realpage, at least with respect to public citizen Aikens, this court said that transunion did not create a sea change in the informational injury case law. So because of that, I think what we have to look at is. Excuse me, if I could interrupt, because I agree with what you just stated, we said in Kelly v. Realpage. Have we said anything else in any other case since transunion, which might suggest any change in our jurisprudence? I don't want to represent yes or no, but not to my knowledge. All right. Thank you. Kelly v. Realpage, at least to my knowledge, was the most recent discussion of transunion. But getting back to if there's not a common law analog, I think what we have to look at here is the FDCPA was designed specifically to give reliable information, to a certain class of people, debtors. So here what happened was there was a letter that was sent that contained, and this is important, that contained misrepresentations, and material facts were not disclosed that would have given my client reliable information and the opportunity to understand what could happen if he failed to pay. And that is the purpose of the statute. So here we have a violation. The adverse effect is that my client was denied an opportunity. Well, I think we know violation of the statute itself doesn't grant standing, right? I agree with that. Okay. Yep. So we have, so that's the first, the first step is there is a violation. But then there's a second and third step. That violation had the adverse effect of denying my client the opportunity to understand what could happen if he failed to pay. And that adverse effect is a direct nexus to what the FDCPA was designed to do, which is to give debtors reliable information so they can have that opportunity. So. Is there really a misrepresentation here? I mean, the words say referring the account to an attorney. That's what happened, didn't it? It went to the NLAR attorney? Yes. So two points on that is that what the letter says is that it says that IC Systems has been authorized to pursue additional remedies, including referring an account to an attorney. So just, if we're just focusing on the word attorney, it is misleading because it's really what's happening is the account is being referred to a debt collector. Is that what your case ultimately comes down to? And that is the reference to referring to an attorney and that this least sophisticated individual would infer from the mere use of attorney that attorneys file complaints, that attorneys pursue litigation. I mean, is that really the inference that you're suggesting could reasonably be drawn by the least sophisticated consumer? Yes. I think what we claim is that the word attorney has a special connotation. A least sophisticated consumer does not understand that attorneys can wear a debt collector hat and an attorney hat. Or a litigator hat and a transactional attorney hat. Exactly. And I think all attorneys are good attorneys. So I'm not trying to say that a litigator is better than a transactional attorney. But are you telling us there should be some sort of bright line that if the word attorney is mentioned, we should always assume that it's going to be a litigation attorney? No. What I am suggesting is that the fact... One of these letters I'm speaking about. Oh, I'm sorry. One of these letters, I mean. Yes. Well, I think, yeah, obviously it would be confined to the FDCPA context, but I think second, again, we have to remember the facts of this case and what the letter actually says. So... Well, we have to remember the facts that you aver and that is, as I understand it, there would be absolutely nothing wrong with this letter saying, you know, we intend to turn this over to an attorney or we have been authorized by a client to turn this over to an attorney. If, in fact, that is true, it must be, by your theory of the case, untrue. And your theory of the case is this has never or almost never been done by this defendant. It's not their practice to do it. Correct. And that's where it's misleading. Correct. Do you understand? And my time's up, but can I... Yeah, sure. Okay, thank you. So, correct. What we're saying here is that it's fine to say that you can refer an accountant attorney if you actually can, someone who acts like an attorney. But the facts of this case are very special because what we allege is that the NLAR vendor, it can't act like an attorney can act. It's a debt collector. It wears a debt collector hat exclusively. But the facts of this case are very important and same with the full language of the letter because here what happened before this letter was sent is that IC Systems called and sent letters to my client. After doing those things, it said that we are authorized to pursue additional remedies, something else other than calls and letters, including referring an accountant to an attorney. So the only reason to refer an accountant to an attorney in this factual posture of this case would be for that attorney to do what attorneys do. And the only additional remedy would be legal action. Does it have to be an inference that the only inclusion? Isn't it, for your theory of the case, enough just to say it's a reasonable inference for the least sophisticated consumer to read this and think, believe that this will be referred to an attorney who may sue me? That's correct. All right, thank you, counsel. We'll get you out of your bottle. Thank you. And we'll hear from your friend. Good morning, Your Honors. Carol Vanderwood for the appellee, IC Systems, Inc. I think the standing issue is significant in this case and needs to be addressed by this court and obviously is a jurisdictional issue that is properly before the court. And the most recent case is the Kelly case where this court has considered the issue. And do you agree this is a facial attack on jurisdiction? Correct. I cannot look to something outside. Yes, this was raised as a facial attack, so we're confined to the operative complaint in the matter. With respect to Kelly, I think one distinguishing factor for this court to consider in looking at what is an issue of first impression, I think, which is the impact of transunion on standing in the context of this type of case under this statute, is that there was an actual concrete injury there. Namely, the plaintiffs in that case were deprived of the opportunity to correct mistakes on their credit reports. It was disclosure. There was actual disclosure for the one subclass, but there was information that was simply retained and analogized to placing a letter in a drawer and not sending it. So it's different than this case. And they could show in that particular case the adverse downstream consequences, is what the court, the language that transunion used, and this court looked at in addressing the Kelly case. So dissemination was really dispositive for purposes of transunion. Is that what you're arguing? Yes. So it's a different factual predicate for the ruling in that particular case. This court in Kelly did, as we agreed, did not create a sea change in standing law, but it did acknowledge that you can't just assert a violation of a statute to establish standing. You have to do more. But that factual underpinning to transunion that you referred to and you've agreed with me, if we follow the path that I understand the transunion majority was suggesting, is to look for some kind of analog, some kind of common law analog, that in transunion it would have been liable, wouldn't it? Yeah. I mean, under the facts of that case, it's much easier to draw an analog to find that. And traditional libel does not require the proof of actual damages, does it? Libel per se. Doesn't? I don't think so. I think they might have been looking at defamation and different types of statutes. That would be different. Yeah. But, again, here, the focus in the complaint here is there was a violation of the statute, and because of that violation, I was harmed. That's the thrust of the standing position, at least in the complaint, and that's the basis of our facial challenge to standing. But, again, if we look at an analog, what's the analog going to be here? I think the argument was made, well, it's a privacy analog, and there was a discussion of a phone call case. Well, those cases have been analyzed a little bit differently than in the context of just a letter. What do you maintain the analog would be? I don't know that there is an analog. What about fraud or misrepresentation? I think misrepresentation was referenced in an appellant's brief, and that's – I understand the argument that that's the analog, but that also – Actual damages are an element. If those – And reliance, and reasonable reliance. And I think that goes to the merits of the claim and that reliance – Reliance by the least sophisticated recipient? Well, I mean, I think in the tort analog, you don't have that same standard. I understand. But, yes, if you're drawing that analogy, I think you would consider that standard and its implication in the tort analog of a misrepresentation. How about emotional injury? Is that another analog, notwithstanding some of our sister courts of appeals? I think that's an issue that's been held not to be sufficient for standing. But, again, that's an issue that this Court has not addressed, and I would say that arguably under Kelly would not suffice, because in that case there was, again, a specific adverse harm there, an inability to correct a credit report that was erroneous so that they could – that the plaintiffs could proceed to actually rent the apartments that they were seeking to rent. Well, let me ask you. I mean, assuming these facts were in the complaint, it seems that Mr. Lazard went to a bankruptcy attorney and incurred some cost, I guess. Isn't that a pecuniary injury? Well, I think we have to step back and say that that wasn't a per se cause of going to the bankruptcy attorney. I guess there were a lot of other financial problems, so I don't think that would be alleged in an amended complaint. But possibly if there was a – No, it would be a cost as far as I heard there. I guess we'd have to see what it says. We could dispute that. But, yes, I think if there was monetary harm and that was alleged sufficiently and with appropriate supporting facts, yes, I think that could arguably be sufficient to show a concrete injury. Okay. So, again, I think this is an issue of first impression. I think there's not a clean, direct analog either under the privacy tort that Plaintiff argued or with respect to misrepresentation. Because, again, you do need to show some sort of reasonable reliance. You need to show additional elements that just aren't at issue here based on the allegations in the complaint. And the level of harm at issue here certainly doesn't rise to the level of harm that this Court acknowledged satisfies TransUnion and Kelly. So our position would be while it doesn't change the law, it certainly, I think, in this particular case, on the face of the pleading that's operative in this case, I think that standing does not exist as it is currently pleaded. So that goes to the issue. The next issue, then, which is whether or not there was, in fact, a misleading or deceptive letter that was sent. And on that, we would disagree with Plaintiffs that this particular letter rose to the level of a violation that this Court acknowledged in Brown. And I think there's a material difference between the Brown case and this particular case. In Brown, the letter said, you are requested to contact the recovery unit of the card service center to discuss your account. Refusal to cooperate could result in a legal suit being filed for collection of the account. You now have five days to make arrangements for the payment of this account. Failure on your part to cooperate could result in our forwarding this account to our attorney with the directions to continue collection efforts. So there's a five-day term limit, and there's actual reference to a legal suit being filed and sending the case to an attorney to continue collection efforts in the context of a reference to a suit being filed. Your friend made an argument, maybe not explicitly, but when you say attorney, everyone assumes that it's a litigation attorney and they're going to be sued, which is what the client's deposition testimony said as well. What's your reaction to that? Well, I think that even the least sophisticated debtor is required to read and understand what is on the document that has been sent to them. And that is not reasonably conveyed or fairly conveyed on the plain language of the letter that was sent. That's not the point, is it? I mean, isn't the point that the least sophisticated consumer would not make distinctions among the functions that attorneys, depending upon their practice, actually engage in? That the least sophisticated consumer would see the word attorney, think lawyer, think courtroom, think litigation, and make the assumption of that as at least a likelihood of something that might follow. Well, I think I would disagree. I think that could make sense if you read the letter in a way that it is not written, which is how it is conveyed in the briefing by plaintiff in this case. So they basically try and rephrase or reconstitute this one paragraph of the letter, which says if you fail to contact us to discuss payment of this account, our client has authorized us to pursue additional remedies to recover the balance due, including referring the account to an attorney. Now, throughout the briefing, the suggestion is always made that it's going to be referred to an attorney to pursue additional remedies. But that's just one of the possible remedies that are referenced here. So to read it to say we're going to refer this to an attorney to pursue additional remedies is absolutely not what is on the plain face of this particular letter. Depending upon how one reads it. Well, I think the plain language is what the plain language is. I mean, it says what it says. There are different levels of literacy. Comprehension. That is an accurate and fair statement, yes. Our opinion in 2018 said in some instances, even a completely accurate statement can be deceptive or misleading, particularly with the least sophisticated consumer standard, right? And that is possible. But we're looking at this in the context of this court's holdings. And in the context of this court's holdings and how it's addressed the issue of references to attorney, this does not rise to that level of a deceptive or misleading practice. And, again, what we want to look at here, even in the context of the least sophisticated debtor, is this is actually true. And I don't think that can't go unacknowledged. It will be referred to an attorney. That was accurate. And that is one of the remedies that may follow. This was not the situation in Brown, for example, where they never intended to actually refer the letter out to an attorney and they never intended to pursue those additional threatened actions. But that was part of the contract at issue in this case, was to actually send it to an attorney for additional remedies, and that was to include additional collection practices. No reference to initiating a legal suit. So I think what we're looking at here is opening the door to a per se holding that if there's a reference to an attorney, it's automatically deceptive. And that's not the law of this circuit or any other court that I've ever seen that has addressed this issue. There needs to be more. I don't understand that to be the plaintiff's theory of the case, that the plaintiff's theory of the case is that there was never an intention to take legal action here and that the implication that would be drawn by the least sophisticated consumer reading the word attorney would be to think litigation. The letter indicates that additional remedies may be pursued to include referring an action to an attorney. That is accurate. And that was intended. And that was intended to send it to an attorney to continue pursuing collection actions. Again, I don't, from reading the complaint, that's not what I understand, though, to be the theory of plaintiff's case. They'll have to prove it. They would have to prove it, but that you never had an intention to carry this thing that far, at least through litigation. The implicit threat of litigation, I think, is their theory, or they're not saying it's a theory. I think it's restated. Actually, as I read the complaint, the allegation is that your client has never or almost never proceeded that far. To actual litigation. But it does regularly proceed to referring it for additional remedies to include sending it to an attorney who will continue to pursue debt collection measures. I understand. These are factual matters that I'm not disputing or advocating one way or another. I'm simply restating what I understand to be the theory of plaintiff's case. Understood, Your Honor. And they're alleging, they're referring, that the letter is false or misleading because it suggests action that would never or almost never be taken by your client. That's what I understand their theory is. In the context of the- And counsel can correct me if I'm wrong when he gets back up. I think that's an accurate representation of where they're going with this. And, again, we would just take the position that the argument was made that this falls within the scope of Brown. And I think our clear position is, and I think the precedent of this circuit, is that this does not fall within Brown. If this court's going to hold that this letter rises to the level of misleading or deceptive, I think it has to go much, much further than that particular case or any other case in this circuit, or I think any other circuit, which is that if there's a reference to an attorney, even from a letter that's clearly not from an attorney but from a debt collector, that a least sophisticated debtor can find that to be misleading because they might think that they're going to be sued. And I think that goes far beyond what this circuit has previously held or what any other circuit has ever held with respect to what constitutes a misleading or deceptive letter. In fact, I don't think any other case was cited by appellant to support that expanse of a reading of a reference to an attorney somehow suggesting litigation or a threat of litigation. All right. Thank you, Candice. Thank you. Thank you. I'm going to come back to the standing. And I wanted to maybe, if we could, go back to Brown and then also look at two cases that were cited in Kelly and they were also cited in TransUnion. Those cases are Casillas. It's a Seventh Circuit case. And then Treshelle, it's an Eleventh Circuit case. So I think if we look at Brown in our case and then we look at Casillas and Treshelle, it shows why we have standing here, the plaintiffs have standing in Brown, and the plaintiffs in those two cases didn't have standing. These are all FDCPA cases. So in Brown in this case, we allege that we were sent a letter that had a deceiving statement because it omitted material facts. So by omitting those material facts, what happened is that our clients suffered the adverse effect of being denied the opportunity to make an informed decision about their account. That adverse effect has a direct nexus to the purpose of the FDCPA. So if we look at Casillas, that was also an FDCPA case, but it involved more of a procedural violation. So there what happened was under the FDCPA, I believe it's 1692G, there are rights that have to be disclosed. So your right to dispute a debt has to be disclosed. And if you want to make that dispute, it has to be in writing. So in that case, the debt collector failed to disclose that the dispute had to be in writing. But there was no deceptive statement in that letter. There was no false statement about where the debt had came from, the amount that was owed. So the failure to disclose that information did not deny the debt a reliable information to make an informed decision about the debt. So there was a violation of the statute, but whatever the adverse effect was, it didn't have a nexus to the purpose of the statute. The same thing goes for Treshelle. So that case is a little closer to ours because what it involved was an attempt to collect a time board debt. So I believe the actionable statement there was act now to resolve your account. But the accounts were time board, so obviously no lawsuit could be filed. But the important distinction in that case is that there was a disclosure in that letter that said that because of the age of your debt, we will not sue you, we will not credit report. So, again, they were claiming there was a violation, but the adverse impact, the adverse effect, didn't have a nexus to the purpose of the FDCPA because there was no denial of the opportunity to understand what was going on because all of the material information was disclosed so the debtor could understand that their account was time board. So that's why we believe we have standing and those out-of-circuit cases are not binding. Would it be correct to say that if the evidence showed that the defendant here had on many occasions referred matters to an attorney like this, would you have standing? And on many occasions they would have referred it to... To lawyers who took litigation action. Yeah, so if the facts came out that way, I don't believe we would have a claim. But we would still, I believe, have standing because the allegation is that we were denied information. We were denied information we needed to make an informed decision. Now if it comes out that, well, actually we... Well, I guess it would come out that that wasn't true, that we just didn't have a claim, therefore we did have the reliable information at the start. I'm not sure the standing inquiry would be a look back like that and I think Kelly v. Realpage gives an answer to that because there it was an FCRA claim. Basically what they said is you need to disclose the sources of the information that resulted in our inaccuracy. So there the source information was actually disclosed, the courts where the criminal history or the eviction history came from, but the third-party vendors that actually culled that information from the courts was not disclosed. So if I'm reading Kelly v. Realpage right, the defendant argued that, well, the plaintiffs didn't do anything with the source information, the inaccuracy didn't actually come from the source information, so they have no standing. But the court said, well, we don't look back at that because it denied them the opportunity to have that information from the start. So I think the same would be here. We would have standing even if the facts came out against us. All right. Thank you, counsel. Thank you, Your Honor.